TONES ZOBES *vs.* INTERNATIONAL PAPER COMPANY.

Oxford.    Opinion June 20, 1917.

*Duty of master in providing safe place for employees.   Contributory negligence.*
*Evidence to be considered as bearing on the question*
*of contributory negligence.*

In the basement of the defendant's mill at Rumford a room called the stone room contained a number of lockers in which certain of the laborers kept their clothing and lunch boxes.   Adjoining and opening into this room was the bottom part of an elevator well, seven feet wide and thirteen feet long.   The stone room had a cement floor, while the floor of the well was of dirt, over which more or less paper scraps and rubbish had been allowed to accumulate.   To allow the floor of the elevator to be placed on a level with the floor of the stone room, the bottom of the well was some inches lower than the floor of the stone room. There were no wheels, pulleys, ropes or machinery in the bottom of the well, and the only means of lighting it was from the stone room.   In this room were four openings for electric lights, besides one at the opening into the well.   On the day of the injury for which recovery is sought in this action there was only one electric light, and no other light burning or in condition to burn in the stone room, and the one near the well was not in commission.   There was no gate or

other barrier across the opening into the well, and nothing else to warn against entering the well except a printed notice in English which read, "Elevator. Employees not allowed to use. International Paper Co."

The plaintiff was a Russian who had been employed by the defendant four days. He could not read English and could speak it little, if any. On the morning of the accident in March, 1915, at about five o'clock, he had been at work since three in the afternoon, being a handler of pulp wood about the yard and in the mill, and working in two consecutive eight hour shifts. After finishing his lunch in the stone room he entered the well to urinate, and the elevator descended from the floor above, crushing him to the earth and inflicting serious injury to his spine. While there were toilets in other parts of the mill, there were none in this vicinity, and the plaintiff's uncontradicted testimony is that he did not know of their existence. The plaintiff testifies that he had seen another workman enter the well the day before for the same purpose, and as it was a soft, stinky place it did not occur to him as being an improper place. The elevator was seldom used and usually locked at night, and there is no evidence that the plaintiff knew the true purpose of the well.

*Held:* The well in the condition in which it was allowed to remain, unguarded and unlighted, was a trap for workmen of the class, to which the plaintiff belonged, and the defendant was at fault in allowing it to so remain.

2. The plaintiff was not guilty of contributory negligence.

3. For the damages sustained, viz, seven months in the hospital, a serious operation on the spine costing four hundred or five hundred dollars, and an apparently permanent injury to the spine which deprives him almost entirely of the use of his legs, four thousand dollars is fixed by the court, under stipulation of the parties, as damages.

Action on the case to recover damages sustained by plaintiff through the alleged negligence of defendant company in leaving an unguarded elevator shaft or well into which the plaintiff had gone and in which he received the injuries complained of in his writ. Defendant filed plea of general issue. At the conclusion of the evidence, the presiding Justice directed a verdict for defendant. To this direction, the plaintiff filed exceptions. The parties stipulated that if the Law Court was of the opinion that the direction of a verdict for the defendant was error, the Law Court should direct that judgment be entered for the plaintiff for such sum as the Law Court was of opinion that the plaintiff was entitled to recover. Exceptions sustained. Judgment for plaintiff. Damages assessed at four thousand dollars.

Case stated in opinion.

*William A. Connellan, and Wilbur C. Whelden,* for plaintiff.

*William H. Gulliver, and Arthur L. Robinson,* for defendant.

SITTING:  CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

MADIGAN, J.  A laborer in the employ of the defendant in March, 1915, entered the bottom of an open elevator well in the defendant's mill at Rumford to urinate, and was injured by a descending elevator. Coming to this country from a small rural town in Russia, he had worked for eight months piling boards in the Pullman yards in Chicago, after which he worked on a farm until entering the defendant's employ, where he had been four days at the time of the accident, his work with the defendant consisting in loading and unloading pulp wood in the yard and in the mill.  He was twenty-five years of age, unable to read English, and speaking it very slightly.

The stone room, so called, in the basement of the mill contained a number of lockers in which employees kept their clothes and lunch boxes.  While this room had four outlets for electric lights, and one before the shaft, but one light was in commission at the time of the accident.  The well was seven feet wide and thirteen feet long, and opened directly into the stone room, from which came its only light. There were no wheels or machinery in the lower part of the well, the floor of which was clay, covered to a certain extent with waste and paper scraps, and some inches lower than the concrete floor of the stone room to the level of which the floor of the elevator could be brought.  This elevator was little used at night and was kept locked so that when needed it was necessary to procure the key.

The plaintiff was working on two consecutive eight hour shifts, from three in the afternoon until eleven at night, and from that hour until seven in the morning.  We do not understand that any special time was set apart for meals, but the laborers with whom he worked were accustomed to take certain time out for lunch.  Having eaten at eleven, at five in the morning he went to the stone room to eat again.  There were no toilets in the stone room, but in another part of the mill there were toilets, or troughs, of the existence of which the plaintiff testifies he had no knowledge.  Not having had occasion to do more than urinate during the four days he had been at work, he never had searched or inquired for toilets.  Having seen one of his fellows go to the well to urinate the day before, as it had a soft, stinky bottom he supposed it was not improper for him to do likewise. There was no gate or barrier across the opening into the well but above the door or on one side of it was a sign printed in English,

"Elevator, employees not allowed to use," signed by the corporate name of the defendant. Having finished his lunch, he entered the well for the purpose above stated, and the man who removed chips, needing the elevator, started it downward from the floor next above, crushing the plaintiff so seriously as to make necessary a serious operation to the spine, and leaving him thereafter in such a condition that his legs are practically useless for hard labor for the balance of his life.

Under the conditions disclosed by the evidence, we do not feel that this foreigner, with no knowledge of mills and machinery, knowing nothing of the existence of the elevator, ignorant of the language in which the warning sign was written, fitted by his life and training to be a mere hewer of wood and drawer of water, was guilty of contributory negligence. He would not, as suggested, hear the doors at the various floors opening as the elevator descended, since as shown by the testimony of the operator the elevator started from the floor next above, so there would be no doors to open; neither does it seem probable that he would retire to such a damp, ill-smelling place to slumber.

The defendant was at fault. For its roughest work it employed many illiterate laborers, of no high order of intelligence or refinement, of all nations and all tongues, needing for this work brawn and muscle and not brains. Their habits, customs and training should be taken into account, and their safety provided for. The shaft opening, though containing a serious hidden peril, was unguarded and unlighted. Located near the stone room which was the only rest room of the plaintiff, and in which the plaintiff was properly at the time, the well was a trap against the danger of which the plaintiff should have been guarded. The plaintiff's exceptions to the order of non-suit are therefore sustained.

According to the stipulation agreed to by the parties, the Law Court is to assess the damages. For seven months in the hospital, a serious surgical operation costing four or five hundred dollars, from which he received much benefit, and for the impairment of his ability to labor in the future because of the loss practically of all the use of his legs, we feel that $4,000 damages are not excessive.

*Exceptions sustained. Judgment for plaintiff.*
*Damages assessed at $4,000.*